UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                            No. 1:23-CR-40

vs.                                                       Hon. Jane M. Beckering
                                                                    United States District Judge

JOHN DAWOOD DALALY,

        Defendant.
_____/

**<u>Government's Response to Defendant's Motion to Reduce Sentence
Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)</u>**

Defendant John Dawood Dalaly filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release to obtain physical therapy by a provider of his choosing. The United States respectfully opposes the motion. The Court should deny the motion because Dalaly has not met his burden of establishing that a sentence reduction is warranted under the statute.

**Factual Background**

On May 8, 2023, Dalaly was convicted of paying a bribe to Rick Johnson, the former Chair of Michigan's Medical Marijuana Licensing Board. This Court sentenced Dalaly to 28 months of imprisonment. (R.87: Judgment, PageID.811.) He began serving his sentence on November 30, 2023, and has served approximately six months of that sentence. His projected release date is October 4, 2025, though he

may be eligible for a step-down to home confinement this year. (R.150-1: Def.'s Ex. A, PageID.1460.)

On June 7, 2024, Dalaly moved under 18 U.S.C. § 3582(c)(1)(A) for a sentence reduction resulting in his immediate release from the custody of the Bureau of Prisons (BOP). The stated basis for his motion is the onset of a serious medical condition during his incarceration at a minimum-security prison camp located at United States Penitentiary Hazelton in West Virginia. (R.149: Mot. to Reduce Sent., PageID.1441.) Dalaly asserts that "he will not recover to his pre-abscess condition and has significant impairment of ambulation and mobility, as well as cognitive decline" because of a spinal infection and fusion surgery in May 2024 and that "he cannot get the necessary level of care within a prison setting, nor can he provide self-care in a prison setting." (R.150: Def.'s Br. in Support of Mot., PageID.1442-43.)

Before filing the motion, Dalaly submitted a request for a compassionate release to the Warden of Hazelton. On May 15, 2024, the Warden denied the request. The denial was based on the following:

> The Health Services Department reviewed you [sic] information concerning this request. They identified that conventional treatment would provide a substantial improvement to your physical condition and your medical concerns can be managed while incarcerated.
>
> You have a Projected Release Date of October 14, 2025, and have not served more than 50% of your sentence to be considered for a Compassionate Release.

(R.150-6: Def.'s Ex. H, Inmate Request to Staff Response, PageID.1520.)

Prison medical records reflect that Dalaly first reported back pain to prison health services on April 19, 2024. He reported that he had been experiencing severe

2

back and shoulder pain for 35 days. (R.153: Def.'s Restricted Access Ex. C, p.28.) The medical notes reflect a referral to the commissary for over-the-counter pain medication and he was scheduled for a follow-up with a mid-level provider. (Id., p.29.) On April 22, Dalaly requested medication for back pain. Radiology orders were requested for his shoulder and spine. (Id., p. 26.) The next day, Dalaly reported that he slipped and fell in the shower, but that he did not lose consciousness or hit his head. Notes indicate that he was using a wheelchair but was able to stand on his own and was conscious, alert, and oriented x4. No signs of acute illness or injury were observed and he did not appear in distress. He reported feeling "not good" all day. (Id., p.21.) On April 25, Dalaly reported lower back pain and that he was using a wheelchair for mobility. It was noted that an order for a spinal x-ray had already been submitted. (Id. p.15.) On May 4, 2024, Dalaly complained of low back pain from his slip and fall in April and bilateral lower extremity weakness up to his mid-calf. He reported constant pain for four weeks. (Id., p.12.) The next day, Dalaly complained of muscle weakness and an inability to stand. He reported bilateral lower extremity weakness, numb legs, and leg swelling. Notes reflect that Dalaly said he was going downhill ever since his fall in the shower. He was transferred to the hospital for evaluation, which was 16 days after he first reported experiencing lower back pain. (Id., p.8.)

    On May 6, 2024, a BOP doctor visited Dalaly at a hospital emergency department, where he found him resting comfortably in bed. Dalaly had been diagnosed with osteomyelitis of the lumbar spine, discitis of the lumbar region,

3

paraspinal abscess, myositis, elevated liver function tests, and UTI. (Id., p.6.) On May 8, Dalaly underwent lumbar laminectomy with drainage of spinal epidural abscess and a lumbar spinal fusion at the Charleston Area Medical Center in West Virginia. One of his treating doctors reported that Dalaly needs intravenous antibiotic therapy until June 19, 2024, followed by oral suppressive antibiotics for 12 months to prevent reinfection. Additionally, the doctor noted that "extensive physical therapy" will be necessary. The doctor concluded that: "Patient is so far showing good signs of wound healing of his spine surgery and his wound care is of upmost importance to avoid any further infection." (R.150-3: Def.'s Ex. E, PageID.1468.) There was no mention of cognitive impairment.

Dalaly's medical records do not reflect any self-reporting or observation of cognitive decline to BOP medical staff between April 19, 2024, and May 14, 2024.

## Legal Framework

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Absent a specific statutory exception, the district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The district court's authority to modify a sentence is thus "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008); *accord United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001).

Title 18, U.S.C., § 3582(c)(1)(A), commonly described as the provision for compassionate release, qualifies as one of the narrow exceptions permitting a

4

sentence modification. Under § 3582(c)(1)(A), district courts may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). The district court may consider a motion under § 3582(c)(1)(A) only if the defendant has exhausted administrative remedies; that is, asked BOP to file such a motion on his or her behalf, and exhausted administrative appeal rights or waited until 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)." 28 U.S.C. § 994(a)(2)(C). Specifically, Congress instructed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). That instruction represents a delegation of authority to the Sentencing Commission. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977). Such a delegation of authority, however, "is not unlimited." *Id.,* at 428. The Commission may not adopt a reading of the phrase

5

"extraordinary and compelling" that is unreasonable or foreclosed by the statutory text, structure, history, and purpose. *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53-58 (2011); *see Batterton*, 432 U.S. at 428. The Sentencing Commission in particular "was not granted unbounded discretion"; "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997). For example, Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

In 2006, the Commission promulgated Sentencing Guidelines §1B1.13, which is the applicable policy statement for §3582(c)(1)(A) motions. This statement initially referred only to motions filed by the BOP Director because defendants were not entitled to file motions under Section 3582(c)(1)(A) until the enactment of the First Step Act on December 21, 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* Section 3582(c) (2012). Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. See 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). In 2022, the Sentencing Commission regained a quorum and promulgated amendments to §1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); *see also* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr."). The amendments to §1B1.13 render the policy statement applicable to defendant-filed motions, broaden the

Commission's description of categories of extraordinary and compelling reasons for relief, and offer more specific guidance to sentencing courts. *See id.*

As with the original imposition of a sentence, a sentencing court should explain the basis for its decision on a § 3582(c)(1)(A) motion in sufficient detail for a reviewing court to ascertain the reasons underlying it. *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021) (citing *Jones*, 980 F.3d at 1106).

## Argument

This Court should deny Dalaly's motion because he has not established that "extraordinary and compelling reasons" support a sentence reduction. In addition, Dalaly has not demonstrated that a reduction is warranted in light of the relevant § 3553(a) factors.

### I. Dalaly Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

Dalaly's request for a sentence reduction should be denied because he has not demonstrated "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction, and that "such a reduction is consistent with [an] applicable policy statement[] issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), not foreclosed by statutory text, history, structure and purpose. *See Mayo Found. for Med. Educ. & Research*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

In this case, Dalaly has asserted that the Bureau of Prisons cannot provide the medical care that he needs to recover from his spinal surgery. His treating doctor advised that Dalaly needs intravenous antibiotic therapy until June 19, 2024; oral suppressive antibiotics for 12 months; and "extensive physical therapy." (R.150-3: Def.'s Ex. E, PageID.1468.)

On June 18, 2024, undersigned counsel was advised by a BOP official that Dalaly has been designated for a transfer to a BOP Federal Medical Center ("FMC") for continued treatment after he release from his current treating facility. This information already was provided to Dalaly's family. FMCs provide advanced health care services to prisoners with more serious medical conditions. USP Hazelton, where Dalaly received services through its health service unit before his transfer to a treatment facility in the community, is not an FMC.

Upon information and belief, the BOP FMCs can provide inmates with oral antibiotic medication and access to physical therapy, either within the medical center or through contracted outpatient facilities. BOP FMCs are accredited by The Joint Commission (http://www.jointcommission.org). They provide care to prisoners who are severally physically impaired and may require daily nursing care, including patients receiving treatment for cancer (including chemotherapy and radiation) and renal failure, and can provide certain orthopedic and general surgical procedures, prosthetics, orthotics, dementia care, and end-of-life care. *See* Congressional Research Service, *In Focus: Health Care for Federal Prisoners*, *Medical Care Levels*,

8

*Federal Medical Centers*, at pp.1-2 (Aug. 26, 2020),

https://crsreports.congress.gov/product/pdf/IF/IF11629 (visited June 19, 2024).

Additionally, BOP directly employs physical therapists. *See* Federal Bureau of Prisons, Physical Therapist under job series number 0633, https://www.bop.gov/jobs/positions/index.jsp?p=Physical%20Therapist (visited June 19, 2024). BOP physical therapists "must have a degree that included or was supplemented by a physical therapy curriculum approved by a recognized professional accrediting organization at the time the curriculum was completed, and the clinical affiliation requirements prescribed by the school." Additionally, BOP physical therapists "must also pass a state-administered national exam" *Id.* at Qualifications. BOP's physical therapists "treat disability, injury, and disease by use of physical agents such as light, heat, cold, water, electricity, massage, and therapeutic exercises. Physical therapy is utilized in several phases of medical care: prevention, diagnosis, treatment, and rehabilitation. Therapists perform tests and measurements of muscles, nerves, skin temperature, range of motion, posture, strength, and the ability to perform activities of daily living." *Id.*

The post-surgical rehabilitation that Dalaly needs does not appear to require treatment modalities that would be unavailable through one of BOP's Federal Medical Centers. Nevertheless, to the extent the Federal Medical Center cannot adequately provide the physical therapy he needs, Dalaly's motion established that he successfully received care from a private third-party contract facility outside of his designated BOP facility last month to address his medical condition. *See also*

9

Congressional Research Service, *In Focus: Health Care for Federal Prisoners, Health Care Outside Prison,* at p.2 (Aug. 26, 2020), https://crsreports.congress.gov/product/pdf/IF/IF11629 (describing BOP contracts with community health care facilities and providers who can provide care not available at the prison). Dalaly should not be provided the luxury of immediate release so that he can receive physical therapy from a provider of his choosing.

For all those reasons, Dalaly has not established "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and so Dalaly's motion cannot be granted.[1]

## II.  The § 3553(A) Factors Weigh Against Dalaly's Immediate Release.

Dalaly has failed to demonstrate the § 3553(a) factors weigh in favor of his immediate release. This is an independent basis on which the Court may deny the motion. *Hampton*, 985 F.3d at 533.

Dalaly was convicted of bribing a public official and sentenced to 28 months of imprisonment. (R.87: Judgment, PageID.811.) Dalaly began serving his sentence on November 30, 2023, and has served approximately six months of that sentence. He is eligible for home detention on July 12, 2025, and his projected release date is October 4, 2025. (R.150-1: Def.'s Ex. A, PageID.1460.) He has served less than half of the custodial sentence of imprisonment.

---

[1] This Court previously denied co-defendant Rick Johnson's second motion to delay self-surrender to BOP so that he could receive physical therapy rehabilitation and monitoring recommended by his treating physicians after his coronary artery bypass grafting surgery. (R.143: Order, PageID.1423.)

10

As this Court observed at Dalaly's sentencing, his offense conduct is a serious crime and public corruption strikes at the heart of our democracy. Dalaly paid the Chair of a State of Michigan Board $68,200 in bribes to help his marijuana businesses. This Court departed downward from the applicable advisory Guidelines range for Dalaly's substantial assistance to law enforcement, and further varied downward by two levels to account for the Sentencing Commission's impending retroactive application of the "zero-point offender" departure pursuant to Amendment 821 and USSG § 4C1.1. However, the Court did not vary below the advisory Guidelines range based on any of the 3553(a) factors.

Dalaly should be required to serve the entire prison sentence this Court imposed and should not be released from custody after serving only about 6.5 months of his 28-month sentence. The original custodial sentence reflected this Court's considered judgment on the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, provide just punishment, and afford adequate general deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2). Based on the § 3553(a) factors, and the totality of relevant circumstances, this Court should deny the motion for a sentence reduction.

## Conclusion

For these reasons, this Court should deny Dalaly's motion for a sentence reduction on the merits.

Dated: June 19, 2024

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

/s/ *Christopher M. O'Connor*
CHRISTOPHER M. O'CONNOR
Assistant United States Attorney
United States Attorney's Office
P.O. Box 208
Grand Rapids, MI 49501-0208
(616) 456-2404
christopher.oconnor@usdoj.gov