UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN DAWOOD DALALY, et al.,

    Defendants.
_____/

Case No. 1:23-cr-40

HON. JANE M. BECKERING

**OPINION AND ORDER**

Now pending before the Court is Defendant John Dawood Dalaly's ("Dalaly") Motion for Compassionate Release (ECF No. 149). The government filed a response in opposition (ECF No. 158), and, after receiving leave of the Court, Dalaly filed a reply (ECF No. 170). For the following reasons, the Court grants the motion.[1]

**I. BACKGROUND**

On April 21, 2023, Dalaly pled guilty pursuant to a plea agreement to payment of a bribe in violation of 18 U.S.C. §§ 666(a)(2) and 2 (Count 2) (Minutes, ECF No. 11). As the plea agreement outlined, Dalaly gave at least $68,200 in cash payments and benefits to Rick Vernon Johnson ("Johnson"), Chairperson of the State of Michigan's Medical Marijuana Licensing Board (MMLB), seeking licensing and approval from the MMLB for Dalaly's company (Plea Agreement, ECF No. 3 at PageID.31). After Johnson accepted things of value from Dalaly,

---

[1] Federal Rule of Criminal Procedure 43 requires that a defendant be present at "sentencing," *see* Rule 43(a)(3), but excludes from that requirement a proceeding that "involves the correction or reduction of sentence under … 18 U.S.C. § 3582(c)." FED. R. CRIM. P. 43(b)(4).

Johnson provided valuable non-public information about the anticipated rules and operation of the MMLB and assistance with license application matters to Dalaly for his company (*id.* at PageID.32). Ultimately, Johnson voted in favor of approving the prequalification status of Dalaly's company and voted in favor of granting medical marijuana licenses to Dalaly's company (*id.* at PageID.33).

Based on his lack of previous criminal history, Dalaly was assessed a criminal history score of zero (Presentence Report [PSR], ECF No. 66 at PageID.526–27). The PSR author noted that Dalaly accepted responsibility for the offense (*id.* at PageID.526). This Court sentenced Dalaly to 28 months' imprisonment followed by two years of supervised release (9/14/2023 Judgment of Sentence, ECF No. 87). The Court varied downward to account for Dalaly's plea agreement and substantial assistance (Statement of Reasons, ECF No. 88 at PageID.818). Dalay did not thereafter file any appeal or motion pursuant to 28 U.S.C. § 2255.

Dalaly was designated to the men's minimum-security camp at United States Penitentiary (USP) Hazleton, in Bruceton Mills, West Virginia (ECF No. 150-1), and he entered prison at age 71 in November 2023. In March 2024, Dalaly allegedly began experiencing severe back pain, and his requests to prison medical staff for assistance were met with instructions to take Tylenol or Advil (ECF No. 150-2). Dalaly alleges that his condition worsened to the point where he needed assistance being carried to the bathroom or maneuvering around the facility (ECF No. 150-4). Dalaly was allegedly seen by a nurse on April 19, 2024, who instructed him to take ibuprofen or acetaminophen, and another nurse on April 22, 2024, who ordered an x-ray of his back and shoulder, as well as lab tests (ECF No. 150 at PageID.1447). Dalaly alleges that the following day, he fell while in the shower due to his weakness and pain, and he was unable to get up on his own without help from other inmates (*id.*). Dalaly represents that by May 4, 2024, he could not

stand or perform simple tasks due to his condition, and medical staff recommended over-the-counter pain medication (*id.* at PageID.1448). On May 5, 2024, Dalaly was sent to the hospital, where imaging revealed multiple abscesses on his spine (*id.* at PageID.1449). Dalaly was transferred to the Charleston Area Medical Center (CAMC), and he underwent spinal surgery on May 8, 2024 (ECF No. 150-3).

On June 7, 2024, Dalaly's counsel filed the motion at bar on Dalaly's behalf (ECF No. 149), including an exhibit filed under restricted access (ECF No. 153). The government filed a response in opposition on June 20, 2024 (ECF No. 158). As noted, Dalaly filed a motion for leave to file a reply brief on June 27, 2024 (ECF No. 164), and Dalaly also filed a motion to file an exhibit under restricted access (ECF No. 166). The Court granted both motions and accepted the reply (ECF No. 170) and the restricted access exhibit (ECF No. 168). The government does not appear to dispute that Dalaly has properly exhausted his administrative remedies.[2]

## II. ANALYSIS

### A. Motion Standard

As a general rule, absent a statutory exception, a district court cannot change a sentence once it is entered. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020). The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to file motions to reduce sentences or obtain compassionate release under certain circumstances. If a defendant has exhausted his administrative remedies, the Court applies a three-step test. At step one, the Court must determine "whether extraordinary and compelling reasons warrant a sentence reduction." *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (citation and quotation marks omitted). At step

---

[2] Dalaly submitted a request for compassionate release with the warden of his facility on May 7, 2024 (ECF No. 150). The request was denied on May 15, 2024, and the denial contained no notice of any appeal rights (ECF No. 150-6).

3

two, the Court must evaluate whether a sentence reduction is consistent with any applicable policy statement of the Sentencing Commission. *Id.* at 1108. At step three, the Court must "'consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case.'" *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). The Sixth Circuit has clarified that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). As the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021).

In 2023, the United States Sentencing Commission promulgated a proposed amendment to United States Sentencing Guidelines (U.S.S.G.) § 1B1.13—the policy statement that elaborates on the criteria for compassionate release—to apply the policy statement to defendant-filed motions. *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28254, 28254–59 (May 3, 2023). The amendment took effect in the absence of contrary action by Congress and now appears in the current sentencing guidelines. *See* U.S.S.G. § 1B1.13. The policy statement describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

4

B. Discussion

Dalaly presents his medical and cognitive condition as the sole ground for his request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dalaly argues that he is suffering from (1) a serious medical condition that requires long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death, and (2) a serious medical condition and serious functional or cognitive impairment that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover during his term of imprisonment (ECF No. 150 at PageID.1455–56). He argues that his medical and cognitive condition constitutes an extraordinary and compelling reason warranting his release (*id.* at PageID.1456). Dalaly argues that he "needs extensive rehabilitation in a multidisciplinary setting that includes physical therapists, occupational therapists, rehabilitation nurses, cognitive memory and behavioral therapy and neuropsychologists" (*id.*). Additionally, Dalaly argues that the 18 U.S.C. § 3553(a) factors weigh in favor of his release because he is a 72-year-old, first time, non-violent offender; was extremely productive in the prison setting prior to his medical emergency; and, although he has served seven months of his 28-month sentence, with Earned Time Credits and good time credits, he will have served half of his sentence by August or September 2024 (*id.* at PageID.1457–58).

The government argues in response that Dalaly has not identified extraordinary and compelling reasons for a sentence reduction because he has been designated for transfer to a Bureau of Prisons (BOP) Federal Medical Center (FMC) for continued treatment after his release from his current treating facility, and "[u]pon information and belief, the BOP FMCs can provide inmates with oral antibiotic medication and access to physical therapy" (ECF No. 158 at PageID.1687–88). The government opines that the post-surgical rehabilitation that Dalaly needs

5

"does not appear to require treatment modalities that would be unavailable through one of the BOP's Federal Medical Centers," and Dalaly successfully received care from a private third-party contract facility outside his designated BOP facility to address his medical condition (*id.* at PageID.1689). The government further argues that the § 3553(a) factors weigh against Dalaly's release because he has served less than half of the custodial sentence of imprisonment (*id.* at PageID.1690).

***Extraordinary and Compelling Reasons & Policy Statement.*** Under policy statement U.S.S.G. § 1B1.13(b)(1), a defendant's own medical condition (or conditions) may satisfy the extraordinary and compelling threshold if the defendant: has a "terminal illness"; suffers from a "serious physical or medical condition," a "serious functional or cognitive impairment" or is experiencing "deteriorating physical or mental health" because of age that "substantially diminishes the ability of the defendant to provide self-care" in his facility and "from which he . . . is not expected to recover"; or is "suffering from a medical condition that requires long-term care or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1).

The Court finds that Dalaly suffers from a serious physical or mental condition that satisfies the extraordinary and compelling threshold. Dalaly's health has declined since he was incarcerated in November 2023, leading to his recent spinal surgery. In a recently-provided medical record from the BOP, the BOP physician states that Dalaly "has severe functional impairment that requires 24-hour skilled nursing care" and that Dalaly "is unable to accomplish ADLs (activities of daily living) without assistance," "needs daily clinical interventions, daily nursing care, and daily therapy which necessitate a long-term acute care level of care" (ECF No. 168, filed under restricted access). The recent medical records indicate that Dalaly is using a catheter to empty his

6

bladder, requires assistance for bowel movements, and has lost between 29 and 40 pounds (*id.*). Although the government represents that Dalaly will be transferred to an FMC, there is no indication that Dalaly has actually been redesignated, and, more importantly, no confirmation that an FMC can provide the 24-hour skilled nursing care that the BOP physician determined Dalaly will require.

Dalaly provided other evidence that his medical, cognitive, and functional conditions are serious and substantially diminish his ability to provide self-care. A physician from CAMC, where he received surgery, noted that Dalaly will need "extensive physical therapy" and recommended a hygienic environment because "any complications related to his current spine infection may affect his ability to ambulate in the future," and Dalaly is at "high-risk for reinfection" (ECF No. 150-3). Dr. Steven Kalkanis, a neurosurgeon and the Chair Emeritus of the Department of Neurosurgery at Henry Ford Medical Group and CEO of Henry Ford Medical Group and Hospital, attested upon review of Dalaly's records that Dalaly's "prognosis is quite poor" and will likely require "significant assistance with ambulation for the rest of his life and will also require assistance for basic activities of daily living like grooming, bathing and eating given the degree of weakness and imbalance he now exhibits" (ECF No. 150-4 at PageID.1470). Dr. Kalkanis further noted that Dalaly will likely "not be able to achieve a pre-abscess recovery to his baseline level of function" and will require "intense, daily specialized care in the form of long-term physical and occupational therapy, physical medical and rehabilitation services, and cognitive memory and behavioral therapy, at least for the next year and likely beyond" (*id.* at PageID.1471).

After reviewing additional medical records and materials regarding the capabilities of the FMC, Dr. Kalkanis "felt compelled to reach out again" to highlight that it is not clear to him that "the frequency and intensity of the required treatment for someone as debilitated as Mr. Dalaly

7

will be sufficient to prevent further ongoing decline in motor and cognitive function, let alone offer any hope for improvement" (ECF No. 170-1). Dr. Kalkanis noted that Dalaly "really does require near 24-hour skilled nursing assistance given his propensity for falls; his inability for self-care including grooming, hygiene and nutrition needs; and his overall lack of mobility" (*id.*). Further, Dalaly's physician for over 15 years provided a letter indicating that Dalaly "has been left essentially a paraplegic," and his only chance at "some recovery long term (partial though it may be) will be for him to be treated at a highly skilled rehab facility" (ECF No. 170-2). Andrew Harb, D.O., M.P.H., and Abdullah Cheema, M.D., also provided letters indicating the seriousness of Dalaly's condition, after reviewing his medical records (ECF Nos. 150-5 & 150-9).

In sum, the evidence demonstrates that Dalaly suffers from a serious medical and cognitive condition that substantially diminishes his ability to provide self-care, requires long-term or specialized medical care, and from which he is not expected to recover. Dalaly has established that his release is warranted in order that he may receive medical care outside of the prison environment. Consequently, the Court finds the first factor—an extraordinary and compelling reason for a sentence reduction—is met. The Court also finds that Dalaly's release comports with the applicable policy statement, U.S.S.G. § 1B1.13(b)(1), and thus the second factor is also met.

**Section 3553(a) Sentencing Factors.** The Court finds that the § 3553(a) factors weigh in favor of Dalaly's release. The Court recognizes the seriousness of Dalaly's bribery offense, especially as pertains to a government entity; however, Dalaly's offense was nonviolent, and, prior to his conviction, Dalaly had no criminal history, history of violence, or abusive behavior. The Court recognizes that Dalaly has also already received some leniency in his sentence, but the Court does not find that releasing Dalaly would diminish the seriousness of his crime, especially given his record of exemplary behavior and efforts at rehabilitation while incarcerated. Dalaly's 72-

8

year-old age, along with his health conditions, further weigh against a finding that he poses a continued danger to society. The Court also finds that Dalaly presents a minimal risk of recidivism. As noted, Dalaly's medical conditions seriously impact his life and likely require near-constant care. Indeed, he is currently nearly if not wholly immobile, and it does not appear he will regain increased mobility in the near future. Further, the Court has considered the kinds of sentences available, the sentencing range, the need to avoid unwarranted disparities, and the need to provide restitution to any victims. *See* 18 U.S.C. § 3553(a).

The Court finds that continued detention is no longer appropriate given the above circumstances, along with Dalaly's seven-month period of incarceration, which was made more laborious by his medical condition, and his anticipated release date short of the 28-month sentence due to good time credits. Based on the information before the Court, the time Dalaly has served in prison has provided adequate deterrence, promoted respect for the law, and provided just punishment. 18 U.S.C. § 3553(a)(2). In light of Dalaly's serious medical condition, the Court finds that any additional time spent in prison would be "greater than necessary." *Id.* § 3553(a).

### III. CONCLUSION

For the foregoing reasons, the Court finds that Dalaly has extraordinary and compelling reasons for compassionate release, is not a danger to others or his community, and his release is consistent with the policy statements and the balance of § 3553(a) factors. Accordingly:

**IT IS HEREBY ORDERED** that Defendant John Dawood Dalaly's Motion for Compassionate Release (ECF No. 149) is GRANTED and Defendant's term of imprisonment is hereby REDUCED to the time he has already served.

**IT IS FURTHER ORDERED** that this Order is stayed for up to fourteen days, for the verification of Defendant's residence and/or establishment of a release plan, to make appropriate

travel arrangements, and to ensure Defendant's safe release, to give the Bureau of Prisons time to properly process Defendant and to enable Defendant to make arrangements for his return to society. Defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure Defendant's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS FURTHER ORDERED** that all other terms of the Judgment of Sentence (ECF No. 87) remain unchanged.

Dated: July 5, 2024                                    /s/ Jane M. Beckering
                                                      JANE M. BECKERING
                                                      United States District Judge